RECEIVED

MAY 0 8 2026

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**PAMELA JEANINE MOSES,**

        Plaintiff,

        Civil Action No. _____

v.

**BILL LEE**, in his official capacity as Governor
of the State of Tennessee; **CAMERON SEXTON**, in his
official capacity as Speaker of the Tennessee House
of Representatives; **JACK JOHNSON**, in his official
capacity as Senate Majority Leader of the Tennessee
Senate; THE TENNESSEE GENERAL ASSEMBLY; and
**MARK GOINS**, in his official capacity as Coordinator
of Elections for the State of Tennessee, **LINDA PHILLIPS**
Shelby County Election Administrator

        Defendants.

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND
## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

### (FILED PRO SE — EMERGENCY RELIEF REQUESTED)

1

# I. INTRODUCTION

Plaintiff PAMELA JEANINE MOSES ("Plaintiff"), an Independent candidate (justice -impacted) duly qualified and certified to run for the United States House of Representatives in Tennessee's 8th Congressional District in the 2026 general election, brings this emergency action to halt the unconstitutional, unlawful, and irreparably harmful mid-election redistricting of Tennessee's congressional districts currently being conducted by the Tennessee General Assembly during a special session convened on May 5, 2026.

Plaintiff and The Committee To Elect Pamela Moses have invested financial resources, campaign infrastructure, and substantial personal effort in reliance upon the boundaries of the existing 8th Congressional District as established under Tennessee law. Plaintiff purchased voter data, conducted outreach, and qualified for the ballot based upon those existing boundaries. The Defendants' sudden and unlawful act of redrawing those district lines mid-election — after the candidate filing deadline has already passed — violates Plaintiff's constitutional rights, destroys the value of campaign investments already made, and renders Plaintiff's candidacy effectively nullified without due process.

This action seeks: (1) a Temporary Restraining Order immediately halting the enactment or implementation of any new congressional district map; (2) a Preliminary Injunction maintaining the status quo through the 2026 election cycle; (3) a declaration that the mid-election redistricting violates the United States Constitution, federal law, and Tennessee state law; and (4) such other relief as the Court deems just and proper.

# II. PARTIES

1. Plaintiff PAMELA J. MOSES is a resident of the State of Tennessee and a duly certified Independent candidate for the United States House of Representatives for Tennessee's 8th Congressional District in the 2026 midterm elections. Plaintiff has met all filing and certification requirements under Tennessee law. Plaintiff has expended financial resources purchasing voter data specific to the existing 8th Congressional District boundaries in direct reliance on those boundaries remaining in effect through the 2026 election cycle.

2

2. Defendant BILL LEE is the Governor of the State of Tennessee, who on May 1, 2026, called a special session of the Tennessee General Assembly specifically to redraw the state's congressional districts during an ongoing election cycle, in direct contravention of existing Tennessee law. He is sued in his official capacity.

3. Defendant CAMERON SEXTON is the Speaker of the Tennessee House of Representatives, who filed legislation to remove the statutory prohibition against mid-cycle redistricting and who is actively directing the redistricting effort. He is sued in his official capacity.

4. Defendant JACK JOHNSON is the Senate Majority Leader of the Tennessee Senate, who is the Senate sponsor of the redistricting legislation. He is sued in his official capacity.

5. Defendant THE TENNESSEE GENERAL ASSEMBLY is the legislative body of the State of Tennessee currently convened in special session to enact new congressional district boundaries.

6. Defendant MARK GOINS is the Coordinator of Elections for the State of Tennessee and is responsible for implementing any new district maps. He is sued in his official capacity.

7. LINDA PHILLIPS is Shelby County Election Administrator and is responsible for Preparation of notices for publication and implementing apportionment plans; She is sued in his official capacity.

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). Plaintiff's claims arise under the First, Fifth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and federal election law.

8. Venue is proper in the Western District of Tennessee pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district, the events giving rise to this action substantially affect this district, and the 8th Congressional District is located within this district.

3

9. This Court has the authority to issue a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65.

## IV. FACTUAL ALLEGATIONS

### A. Tennessee Law Prohibits Mid-Cycle Redistricting

10. Tennessee Code Annotated § 2-16-102 governs the establishment of congressional districts and expressly mandates that the General Assembly "shall establish the composition of districts." Critically, existing Tennessee law provides that "[congressional] districts may not be changed between apportionments," establishing a clear statutory prohibition on precisely what Defendants are now attempting.

11. This prohibition has been in Tennessee statutory law since 1972 — over fifty years. No mid-cycle redistricting of congressional seats has been attempted in that entire period.

12. On May 4, 2026, House Speaker Cameron Sexton filed legislation to repeal this long-standing protective provision. This repealer is itself an unconstitutional act, as it is designed solely to remove a substantive legal protection in order to harm identified candidates currently running for office in an ongoing election cycle.

### B. The Special Session Was Called Mid-Election

13. The Tennessee primary for the 2026 U.S. House of Representatives elections is currently scheduled for August 6, 2026. The candidate qualification and filing deadline for that election has already passed prior to the calling of this special session.

14. Plaintiff met all requirements and was certified as a qualified candidate for the 8th Congressional District prior to the calling of this special session, in lawful reliance on the existing district boundaries.

15. On May 1, 2026, Governor Lee issued a proclamation calling a special legislative session beginning May 5, 2026, solely for the purpose of redrawing congressional district maps in advance of the November 2026 midterm elections.

4

16. The special session was called with political intent explicitly acknowledged by its architects. Senator Marsha Blackburn publicly stated the redistricting was necessary to "cement Donald Trump's agenda." President Donald Trump publicly acknowledged pressuring Governor Lee to call this special session.

16(a). On May 7, 2026 — the same day Plaintiff filed this action — Defendant MARK GOINS, in his official capacity as Coordinator of Elections, transmitted a letter to Plaintiff via email after business hours, purporting to offer Plaintiff three options as a result of the mid-election redistricting: (1) run in the new district bearing the same number as her existing nominating petition; (2) run in a newly numbered district by filing a notarized statement by noon on May 15, 2026; or (3) withdraw by noon on May 15, 2026, by filing a notarized statement. This letter, attached hereto as **Exhibit A**, constitutes direct evidence that Defendants have already implemented and are actively administering the unconstitutional redistricting that is the subject of this action. The letter further demonstrates the irreparable and immediate nature of the harm to Plaintiff — she has been given a deadline of eight days to either abandon her existing candidacy, submit to the unconstitutional redistricting, or withdraw entirely from the race. This coercive, government-imposed ultimatum, issued mid-election to a certified candidate, is itself an unconstitutional burden on Plaintiff's First and Fourteenth Amendment rights.

## C. Plaintiff's Reliance and Injury

17. In direct and reasonable reliance upon the existing boundaries of the 8th Congressional District, Plaintiff purchased voter data and voter files specific to the voters and geography of that district. This was a necessary campaign expenditure made in good faith under the assumption, guaranteed by existing law, that the district boundaries would remain unchanged through the 2026 election cycle.

18. The redistricting proposed by Defendants will fundamentally alter the boundaries of the 8th Congressional District, rendering Plaintiff's purchased voter data inapplicable, obsolete, and wholly wasted. Plaintiff will not be able to recover these expenditures.

19. Beyond financial harm, the proposed redistricting effectively eliminates or substantially transforms the constituency Plaintiff has been campaigning among, destroying months of

voter outreach, relationship-building, and name recognition developed within the existing 8th District.

20. As an Independent candidate, Plaintiff has no party apparatus, no party financial support, and no party infrastructure to absorb these losses or rapidly reconstitute a campaign in a newly drawn district. The harm to Plaintiff as an Independent is categorically greater than any harm to party-affiliated candidates who have access to institutional party resources.

21. Plaintiff has no adequate remedy at law. Money damages cannot restore lost campaign time, voter relationships, or the constitutional right to run for office under lawfully established district boundaries.

21(a). Plaintiff's reliance on the existing boundaries of the 8th Congressional District is not limited to recent expenditures. For approximately two (2) years prior to the filing of this action, Plaintiff has continuously and actively campaigned for the United States House of Representatives seat for the 8th Congressional District. During this period, Plaintiff has expended personal financial resources on voter data acquisition, voter file purchases, campaign materials, outreach efforts, travel within the district, and related campaign infrastructure — all specific to the geographic boundaries and voter population of the existing 8th Congressional District. The cumulative value of these two years of financial investment, labor, time, and campaign relationship-building represents a substantial and non-recoverable loss directly caused by Defendants' mid-election redistricting. Plaintiff is entitled to remuneration for these losses, which cannot be adequately compensated by any remedy short of maintaining the existing district boundaries. As an Independent candidate without party financial support, the destruction of two years of campaign investment constitutes a uniquely catastrophic and unequal harm.

## D. The Redistricting Plan

22. The proposed redistricting plan, released by Speaker Sexton and Senate Majority Leader Johnson on May 6, 2026, redraws all nine of Tennessee's congressional districts. It is designed to produce nine Republican-leaning districts, eliminating all Democratic representation from Tennessee's congressional delegation.

6

23. The plan was not created by the Tennessee legislature independently but was designed with direct input from and at the direction of the White House, as publicly acknowledged.

24. The new 8th Congressional District boundaries bear no meaningful relationship to the existing 8th District boundaries upon which Plaintiff relied in qualifying and campaigning.

## V. CLAIMS FOR RELIEF

### COUNT I — VIOLATION OF THE FOURTEENTH AMENDMENT, DUE PROCESS CLAUSE (42 U.S.C. § 1983)

25. Plaintiff re-alleges all preceding paragraphs.

26. The Due Process Clause of the Fourteenth Amendment prohibits the government from arbitrarily depriving any person of a protected liberty or property interest. Plaintiff has a constitutionally protected liberty interest in candidacy, recognized under established Fourteenth Amendment jurisprudence. See Bullock v. Carter, 405 U.S. 134 (1972); Anderson v. Celebrezze, 460 U.S. 780 (1983).

27. Plaintiff has a protected property interest in the voter data and campaign materials purchased in reliance on existing district boundaries. The government may not, without due process, take actions that destroy the value of lawfully obtained property.

28. By retroactively altering the district in which Plaintiff is already a certified candidate — after the filing deadline, after financial commitments have been made, and during an ongoing election — Defendants have arbitrarily deprived Plaintiff of these protected interests without due process of law.

28(a). The May 7, 2026 letter from Defendant Goins (Exhibit A) further evidences the due process violation herein. By imposing an eight-day deadline — noon on May 15, 2026 — within which Plaintiff must make an irrevocable election regarding her candidacy, Defendants have compounded the constitutional deprivation. Plaintiff is being forced, without meaningful notice, adequate time, or a fair opportunity to be heard, to either ratify the unconstitutional redistricting or forfeit her certified candidacy. This coercive

7

ultimatum, imposed in the absence of any prior judicial or administrative process, constitutes a deprivation of Plaintiff's liberty and property interests without due process of law.

29. This violation is actionable under 42 U.S.C. § 1983.

## COUNT II — VIOLATION OF THE FOURTEENTH AMENDMENT, EQUAL PROTECTION CLAUSE (42 U.S.C. § 1983)

30. Plaintiff re-alleges all preceding paragraphs.

31. The Equal Protection Clause requires that all similarly situated persons be treated equally under the law. The redistricting plan was crafted with the explicit purpose of cementing one political party's dominance and eliminating the ability of independent and opposition candidates to meaningfully compete.

32. As an Independent candidate, Plaintiff is uniquely and disproportionately harmed by mid-election redistricting that is designed to favor a specific political party. The plan discriminates against Plaintiff as an Independent candidate, who has no party infrastructure to absorb the disruption, in violation of equal protection principles.

33. The redistricting plan also dilutes the voting power of minority communities in Shelby County and the 8th District region, in violation of equal protection principles recognized in Shaw v. Reno, 509 U.S. 630 (1993), and Miller v. Johnson, 515 U.S. 900 (1995).

## COUNT III — VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)

34. Plaintiff re-alleges all preceding paragraphs.

35. The First Amendment protects the right to associate for political purposes, including the right to run for office and campaign. Candidacy and electoral participation are core First Amendment activities. See Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214 (1989).

8

36. The mid-election redistricting, timed deliberately after the filing deadline and during active campaigns, constitutes a severe and unjustified burden on Plaintiff's First Amendment right to run for office, to associate with voters in the existing 8th District, and to participate meaningfully in the political process.

37. The government has no compelling interest sufficient to justify the severe First Amendment burden imposed on certified candidates by fundamentally altering their electoral district mid-election.

## COUNT IV — VIOLATION OF ARTICLE I, SECTION 4 (ELECTIONS CLAUSE) AND ARTICLE I, SECTION 2 OF THE U.S. CONSTITUTION

38. Plaintiff re-alleges all preceding paragraphs.

39. The Elections Clause of Article I, Section 4 grants Congress authority to regulate the time, place, and manner of federal elections. The Supreme Court has recognized that this clause limits arbitrary state interference with ongoing federal elections. Cook v. Gralike, 531 U.S. 510 (2001).

40. Article I, Section 2 requires that Representatives be chosen "by the People." Redistricting that is transparently designed to predetermine the outcome of a federal election — conducted with White House direction and designed to guarantee nine Republican seats — violates the fundamental principle that representatives be chosen through meaningful popular elections.

41. Altering the composition of federal election districts after candidates have qualified and the election cycle is underway constitutes an unconstitutional interference with the conduct of a federal election.

## COUNT V — VIOLATION OF TENNESSEE CODE ANNOTATED § 2-16-102 AND RELATED STATE STATUTES

42. Plaintiff re-alleges all preceding paragraphs.

43. Tennessee Code Annotated § 2-16-102 and the prohibition that "[congressional] districts may not be changed between apportionments" reflect a binding legal constraint on Defendants'

9

authority. This prohibition has the force of law and was in effect when Plaintiff qualified as a candidate.

44. The attempt to repeal this prohibition during the same special session in which redistricting is being conducted does not cure the legal defect, because: (a) the repeal is itself motivated by unconstitutional purposes; (b) the legislature cannot retroactively eliminate vested candidate rights by repealing a protective statute mid-election; and (c) the repeal violates the substantive due process rights of candidates who relied on the existing statutory framework.

45. Tennessee Code Annotated § 2-5-101 et seq. governs the candidate qualifying process. Plaintiff complied with all requirements. The legislature cannot unilaterally invalidate the candidacy of already-qualified candidates by redrawing the districts they qualified to run in.

## COUNT VI — VIOLATION OF THE VOTING RIGHTS ACT, 52 U.S.C. § 10301 (ALTERNATIVE/ADDITIONAL CLAIM)

46. Plaintiff re-alleges all preceding paragraphs.

47. To the extent the proposed redistricting plan dilutes minority voting strength in Shelby County and surrounding areas of the 8th District region — by fracturing a cohesive minority community across multiple congressional districts — such action violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, even in light of the recent Supreme Court decision in Louisiana v. Callais (2026), which addressed race-based districting but did not authorize race-based vote dilution.

48. The proposed plan's cracking of the Shelby County minority community into three separate congressional districts is a result-based violation of Section 2 regardless of whether it is race-based in intent.

10



# VI. EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff moves this Court pursuant to Federal Rule of Civil Procedure 65 for an immediate Temporary Restraining Order, and upon further briefing, a Preliminary Injunction, halting the enactment and implementation of any new congressional district map pending resolution of this action. The four factors governing injunctive relief under Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), each favor Plaintiff.

## A. Plaintiff Is Likely to Succeed on the Merits

As demonstrated above, Defendants are violating multiple provisions of the United States Constitution and federal and state law. The mid-election redistricting is expressly prohibited by Tennessee statute; the stated purpose of the redistricting (to "cement" one party's political agenda) reflects impermissible political targeting; and the retroactive alteration of existing candidacy rights without due process is flatly unconstitutional. Plaintiff's legal claims are well-grounded and Plaintiff is likely to succeed.

## B. Plaintiff Will Suffer Irreparable Harm Absent Relief

Plaintiff faces irreparable harm on multiple fronts. First, the violation of constitutional rights is, by definition, irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Second, the financial investments already made — purchased voter data, campaign materials, and expenditures tied to the existing 8th District — cannot be recovered once the election cycle proceeds under new boundaries. Third, the campaign relationships, voter outreach, and constituency-building Plaintiff has conducted in the existing 8th District cannot be transplanted into a newly drawn district. These harms are not compensable by money damages and will be permanent if redistricting proceeds.

11



## C. The Balance of Equities Favors Plaintiff

The harm to Plaintiff from denial of injunctive relief — elimination of a lawfully filed candidacy and destruction of campaign investments — vastly outweighs any cognizable harm to Defendants from maintaining the status quo. The existing district boundaries have been in effect since 2022. The Tennessee primary is not until August 6, 2026. There is no emergency requiring new maps to be drawn in the next few days other than the Defendants' desire to lock in a political advantage. The State itself had fifty years of law prohibiting this very action, demonstrating that no legitimate governmental interest requires mid-election redistricting.

## D. The Public Interest Favors Injunctive Relief

The public interest strongly favors protecting the integrity of ongoing elections. Courts have repeatedly held that the public interest is served by ensuring that elections are conducted fairly, that ballot access rights are protected, and that redistricting does not occur in the middle of an election cycle in ways that confuse voters and harm candidates. Purcell v. Gonzalez, 549 U.S. 1 (2006) (recognizing that court orders affecting elections close in time to election day can cause confusion and harm the public interest). Allowing redistricting after the filing deadline has passed creates precisely the kind of voter confusion, candidate harm, and electoral chaos that election law is designed to prevent.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue a TEMPORARY RESTRAINING ORDER immediately enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with them, from enacting, certifying, implementing, or taking any action to give effect to any new congressional district map resulting from the May 2026 special legislative session;

2. Issue a PRELIMINARY INJUNCTION, following expedited briefing, maintaining the existing congressional district boundaries in effect for all purposes related to the 2026 election cycle, including candidate certification, voter registration, ballot preparation, and election administration;

12

3. Issue a DECLARATORY JUDGMENT that the mid-election redistricting of congressional districts during an active election cycle, after candidate filing deadlines have passed, violates the First and Fourteenth Amendments to the United States Constitution, the Elections Clause of Article I, and Tennessee Code Annotated § 2-16-102;

4. Issue a DECLARATORY JUDGMENT that the legislative repeal of the statutory prohibition on mid-cycle redistricting is unconstitutional as applied to the 2026 election cycle and to candidates who have already qualified under the existing district boundaries;

5. Issue a PERMANENT INJUNCTION prohibiting Defendants from implementing any new congressional district map for the 2026 election cycle;

6. Award Plaintiff such other and further relief as this Court deems just, proper, and equitable, including but not limited to costs and expenses of litigation.

7. Award Plaintiff **compensatory damages and remuneration** for the financial losses, campaign expenditures, and the value of two (2) years of candidate investment — including but not limited to voter data purchases, campaign materials, outreach costs, and related expenditures — made in reasonable and lawful reliance upon the existing boundaries of the 8th Congressional District, all of which have been rendered valueless by Defendants' unconstitutional mid-election redistricting;

## VERIFICATION

I, PAMELA JEANINE MOSES, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on: 5/7/2026

**PAMELA JEANINE MOSES (Pro Se Plaintiff)**

x _____

**PO BOX 80564**

**MEMPHIS, TN 38108**

**901-329-9992 mosesforcongress@gmail.com**

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, I filed the foregoing Complaint and Emergency Motion **Exhibit A**, the May 7, 2026 letter from Mark Goins, Coordinator of Elections, Tennessee Division of Elections, which was received by Plaintiff on or about May 7, 2026, and which is attached hereto and incorporated by reference in its entirety served with the Clerk of the United States District Court for the Western District of Tennessee, and caused copies to be served upon Defendants at the following addresses by personal delivery certified mail process:

**Office of the Governor Bill Lee**
600 MARTIN LUTHER KinS
**Tennessee State Capitol, 1st Floor**

**Nashville, Tennessee 37243**

Linda Phillips
980 Nixon DR.
muphis TN
38118

**Speaker Cameron Sexton**

**Tennessee House of Representatives**

**301 6th Avenue North, Suite 600**

**Nashville, Tennessee 37243**

**Senate Majority Leader Jack Johnson**

**Tennessee State Senate**

**301 6th Avenue North**

**Nashville, Tennessee 37243**

**Mark Goins, Coordinator of Elections**

**Tennessee Division of Elections**

**312 Rosa L. Parks Avenue, Snodgrass Tower, 7th Floor**

**Nashville, Tennessee 37243**

X _____
PAMELA J. MOSES, Pro Se Plaintiff

14



**EXHIBIT A**

Tennessee Secretary of State

Tre Hargett



Elections Division
312 Rosa L. Parks Avenue, 7th Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tnsos.gov

May 7, 2026

Ms. Pamela Jeanine "P." Moses
804 Holly Street
Memphis, TN 38112

RE:     Qualifying Procedure After Congressional Redistricting of 2026

Dear Ms. Moses:

As you may have heard, during a Special Legislative Session, the Tennessee General Assembly adopted new district lines for the U.S. House of Representatives (U.S. House). You can view the new legislative district lines at GoVoteTN.gov.

As a candidate who has already qualified for the U.S. House of Representatives, you are not required to submit a new nominating petition. You may choose one of the following options described below:

1. Run in the new district that has the same district number as the district number that appears on your nominating petition; or

2. Run in a new district that has a different district number than what appears on your nominating petition by filing a notarized statement with the Coordinator of Elections by noon on May 15; or

3. Withdraw by noon on May 15 by filing a notarized statement with the coordinator of elections.

You may file a notarized statement to change the district or withdraw in person, by mail, or by attaching the statement to Mark.Goins@tnsos.gov. For mailing and delivery purposes, you can find the office address on the letterhead of this letter. If you take no action, you will remain qualified in the district listed on your original nominating petition.

Thank you for your cooperation and participation in the election process.

Sincerely,

Mark Goins
Coordinator of Elections

sos.tn.gov
