# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**PAMELA JEANINE MOSES,**

        Plaintiff,         )        **NO. #3:2026-cv-00694**

        )  Honorable Chief William L. Campbell Jr.
        )  Honorable John B. Nalbandian
        )  Honorable  Greg N. Stivers

vs.                            )

**BILL LEE**, in his official capacity as Governor

of the State of Tennessee; **CAMERON SEXTON**, in his

official capacity as Speaker of the Tennessee House

of Representatives; **JACK JOHNSON**, in his official

capacity as Senate Majority Leader of the Tennessee

Senate; THE TENNESSEE GENERAL ASSEMBLY; and

**MARK GOINS**, in his official capacity as Coordinator

of Elections for the State of Tennessee, **LINDA PHILLIPS**

Shelby County Election Administrator

        Defendants.         )

---

**PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BASED ON THIRD AMENDED VERIFIED COMPLAINT   (EMERGENCY RELIEF REQUESTED**
               **— AUGUST 6, 2026 PRIMARY DEADLINE)**

---

## INTRODUCTION

Plaintiff Pamela Jeanine Moses, proceeding *pro se*, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 for a Temporary Restraining Order and, upon expedited briefing, a Preliminary Injunction. This motion is filed in accordance with this Court's June 4, 2026 Order (Doc. No. 42), which denied the original Motion for Temporary Restraining Order (Doc. No. 11) without prejudice specifically because that motion was tied to the original complaint — and expressly preserved Plaintiff's right to seek relief based on the Third Amended Verified Complaint (Doc. No. 32), now the operative pleading.

This is not a general redistricting challenge. Plaintiff does not ask this Court to second-guess legislative mapmaking. Plaintiff brings two distinct, particularized injuries no other plaintiff in this consolidated litigation can claim. **First**: Tennessee's own Election Coordinator, Defendant Mark Goins, sent Plaintiff a coercive ultimatum on May 7, 2026, giving her eight days to abandon, restructure, or withdraw a candidacy she had been building for two years — based on an unconstitutional mid-election redistricting enacted after the qualifying deadline had already closed. **Second**: The unconstitutional special qualifying window created by that same legislation produced a specific, named competitor — Heidi Kuhn — who appears on Plaintiff's ballot solely as the product of constitutional violations and who would be barred from that ballot under the legislature's own policy, but for a deliberately manufactured effective-date gap in HB 618/SB 624.

The August 6, 2026 primary is 62 days away. Every day that passes without relief is a day Plaintiff campaigns on an unconstitutionally altered electoral field against an opponent whose presence on her ballot is itself a constitutional violation. The four *Winter* factors each favor Plaintiff, and this Court should grant emergency relief.

## PROCEDURAL BACKGROUND

This action was originally filed in the United States District Court for the Western District of Tennessee on May 7, 2026, and transferred to this Court on May 25, 2026. This Court determined that the case must be heard by a three-judge panel pursuant to 28 U.S.C. § 2284 and consolidated it for case management purposes with three other redistricting cases. (Doc. No. 28). On May 27, 2026, Plaintiff filed her Third Amended Verified Complaint (Doc. No. 32), which superseded all prior pleadings and is now the operative complaint.

On June 4, 2026, this Court issued its Order (Doc. No. 42) confirming that: (1) the Third Amended Complaint is the operative pleading; (2) Defendants' prior motions to dismiss are moot; (3) the original TRO motion (Doc. No. 11) is denied without prejudice to seeking relief based on the Third Amended Complaint; (4) Plaintiff's case retains its independent identity; and (5) Plaintiff has independent briefing rights. This renewed motion is filed in direct response to that invitation.

**PRELIMINARY STATEMENT ON STANDING AND SOVEREIGN IMMUNITY**

**A.  Plaintiff Has Concrete, Particularized Standing Distinct From Other Plaintiffs.**

Plaintiff Moses is a duly certified, independent congressional candidate for Tennessee's 8th Congressional District who: (a) qualified under the rules in effect at the time of her certification; (b) has campaigned continuously for approximately two years, expending personal financial resources on voter data, materials, travel, and outreach specific to the existing 8th District; and (c) is now compelled by Defendant Goins's May 7, 2026 ultimatum to irrevocably alter or abandon that candidacy.

These injuries are not shared by any other plaintiff in this consolidated litigation. Unlike organizational plaintiffs or voter plaintiffs, Plaintiff Moses is an *actual candidate* whose certified ballot position, campaign investments, and competitive field are directly and personally altered by the challenged legislation. The state court's NAACP ruling dismissed organizational plaintiffs for failing to establish 'a distinct and palpable injury.'  Plaintiff Moses presents precisely that — a documented, individualized injury that cannot be disputed. Her standing is unimpeachable.

**B.  Ex Parte Young Permits This Action Against Defendants Goins and Phillips.**

Defendants Goins and Phillips are subject to suit in their official capacities under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). Sovereign immunity does not bar prospective injunctive relief against state officers who are actively enforcing unconstitutional statutes. The state court NAACP decision confirmed this principle — sovereign immunity barred claims against Governor Lee and the General Assembly, but not against the Coordinator of Elections.

Here, Defendant Goins has already demonstrated that he is the implementing officer: he personally transmitted the May 7, 2026 coercive ultimatum to Plaintiff.  He is administering the challenged legislation. *Ex parte Young* applies directly. Defendant Phillips, as Shelby County Election Administrator, is likewise responsible for implementing the district boundaries and ballot preparation in the county where Plaintiff's candidacy is centered. Both defendants are proper targets for the injunctive and declaratory relief sought here.

Plaintiff preserves her claims against all defendants in the Third Amended Complaint. For purposes of this TRO motion, however, Plaintiff's primary request for injunctive relief is directed at Defendants Goins and Phillips as the enforcement officers of the challenged legislative scheme.

## ARGUMENT

A temporary restraining order is appropriate when the movant demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). All four factors favor Plaintiff Moses.

## I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

Plaintiff's claims arise under well-established constitutional and statutory law. Each count of the Third Amended Complaint supports a cognizable legal theory. The most compelling are addressed in turn.

### A. Due Process — Retroactive Destruction of a Vested Candidacy.

The Due Process Clause of the Fourteenth Amendment prohibits the government from arbitrarily depriving any person of a protected liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Plaintiff holds two recognized protected interests.

First, Plaintiff has a constitutionally protected liberty interest in her candidacy. *Bullock v. Carter*, 405 U.S. 134 (1972); *Anderson v. Celebrezze*, 460 U.S. 780 (1983). She qualified for the ballot under the rules then in force, invested two years of campaign effort and personal financial resources specific to the existing 8th Congressional District, and held a certified candidacy that was — by state law — entitled to proceed to the August 6 primary on those terms.

Second, Plaintiff has a protected property interest in the voter data, campaign materials, and infrastructure purchased in direct reliance on the statutory promise that district boundaries would not change mid-cycle. Tennessee Code Annotated § 2-16-102 enshrined that promise for fifty years. The government may not retroactively destroy the value of lawfully acquired property without due process.

Defendant Goins's May 7, 2026 letter (Exhibit A to the Third Amended Complaint) compounds the violation. By imposing an eight-day ultimatum — noon on May 15, 2026 — within which Plaintiff must irrevocably elect to ratify the unconstitutional redistricting or forfeit her certified candidacy, Defendants have deprived Plaintiff of these protected interests without any prior notice, hearing, or meaningful opportunity to be heard. A forced, irreversible election of this magnitude — made under eight days of duress — is not due process.

**B. First Amendment — Severe Burden on Candidacy and Association Under Anderson-Burdick.**

The First Amendment protects the right to run for office, to associate with voters for political purposes, and to campaign. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989). Restrictions on these rights are evaluated under the *Anderson-Burdick* balancing framework: the severity of the burden on First Amendment rights must be weighed against the government's asserted interests. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Severe burdens require compelling governmental interests.

The burdens here are severe and compounded. The mid-election redistricting eliminated the constituency Plaintiff had spent two years building. The coercive ultimatum demanded she restructure or abandon that effort in eight days. The unconstitutional special qualifying window then flooded her race with a new competitor — Kuhn — who carries name recognition, a prior public campaign, and institutional advantages that no independent candidate without party support can match. These combined burdens are not merely significant — they are functionally disqualifying for an independent candidate.

On the other side of the scale, the stated governmental interest is telling. The record contains the on-the-record statement of Senator Stevens: 'There is an election this fall of who's going to control the House of Representatives. That's why. We want Republicans to maintain control of the House of Representatives.' (Third Am. Compl. ¶ 14, Ex. 1, Sen. Judiciary Comm. Tr. at 70:23–71:2). Partisan entrenchment is not a compelling governmental interest sufficient to justify the severe First Amendment burdens imposed here.

**C. The Kuhn Injury — Violation of Tenn. Code Ann. § 2-5-101 and Unconstitutional Special Qualifying Window.**

This is Plaintiff's most legally unique claim, not presented by any other plaintiff in the consolidated litigation. The Third Amended Complaint establishes the following undisputed facts:

(1) The qualifying deadline for the 2026 primary had already passed before the special session.

(2) 2026 Tenn. Pub. Ch. 2, 2d Extra. Sess. created a post-redistricting special qualifying window running through noon on May 15, 2026.

(3) Heidi Kuhn — Shelby County Criminal Court Clerk, a sitting elected official whose term runs through September 1, 2026 — lost the Shelby County Mayoral Democratic primary on May 5, 2026, finishing fourth with 10.83% of the vote (8,054 of 74,382 cast).

(4) Within days of losing, Kuhn used the special qualifying window to enter the 8th Congressional District race — a race in which she has no legitimate claim to appear.

(5) During the same regular session, the Tennessee Legislature passed HB 618/SB 624, restricting dual officeholding — but deliberately set its effective date as January 1, 2027, immunizing Kuhn from that restriction for this election cycle.

Tennessee Code Annotated § 2-5-101 governs the candidate qualifying process. A candidate who has already submitted a nominating petition for one race in the 2026 election cycle ***may not*** submit a petition for a different race in the same cycle without withdrawing from the first. This prohibition is further codified in 2024 Tenn. Acts ch. 822, which expressly restricts candidates from holding simultaneous petitions across races in the same election cycle. Even if defendants argue Kuhn's prior county mayoral race falls outside the technical reach of § 2-5-101, that argument fails independently: Kuhn's qualification is void as the direct product of the unconstitutional special qualifying window — a window that would **not** exist but for the constitutional violations challenged here.

The Court need not reach the statutory question to remove her. Kuhn qualified through a special window that exists only because of the unconstitutional redistricting — a window that would **NOT** exist but for the constitutional violations challenged here. A TRO removing Kuhn from the CD-8 ballot restores the electoral field that would have existed absent those violations.

The deliberate gap between HB 618/SB 624's passage and its effective date is independently indefensible. The Legislature expressly recognized the policy problem of sitting officeholders simultaneously holding and seeking office, passed a law prohibiting it — and then deliberately exempted the very election cycle in which the sitting officeholder it benefited would use it.

This is *not* incidental legislative timing. It is <u>constitutional manipulation</u>, and it constitutes an arbitrary, irrational classification that cannot survive equal protection scrutiny.

**D. Equal Protection — Independent Candidates Are Disproportionately and Irrationally Harmed.**

The redistricting scheme and special qualifying window operate together to treat Plaintiff — an Independent candidate with no party infrastructure, no party financial support, and no party apparatus — fundamentally differently from party-affiliated candidates who can absorb the shock of mid-election redistricting through institutional support networks. The coercive ultimatum's eight-day deadline is catastrophic for a self-funded independent candidate and comparatively inconsequential for a party-backed candidate with staff, donors, and infrastructure.

The redistricting plan also cracks the cohesive minority community of Shelby County across three congressional districts — the 5th, 8th, and 9th — for the first time in fifty years. This constitutes partisan vote dilution that disproportionately harms the minority community in which Plaintiff's existing district was centered. Following *Louisiana v. Callais*, 608 U.S. ___ (2026), *Shaw v. Reno*, 509 U.S. 630 (1993), and *Miller v. Johnson*, 515 U.S. 900 (1995), racially disparate partisan cracking remains subject to constitutional challenge.

**E.  Elections Clause — Federal Election Integrity.**

Article I, Section 2 requires that Representatives be chosen 'by the People.' Article I, Section 4 grants Congress the authority to regulate federal elections. *Cook v. Gralike*, 531 U.S. 510 (2001). A redistricting process conducted at White House direction — with its partisan purpose explicitly stated on the legislative record — and designed to predetermine the outcomes of federal House races, constitutes an unconstitutional interference with the conduct of a federal election. The manufacture of nine Republican-safe districts through a process designed by and for the executive branch of the federal government is not a legitimate exercise of state redistricting authority.

**II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT RELIEF.**

Irreparable harm is presumed when First Amendment rights are infringed. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ('[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury'). Beyond that presumption, Plaintiff faces multiple, compounding, non-compensable injuries.

**First**, every day that the unconstitutional map remains in effect is a day Plaintiff campaigns in a redrawn district against competitors who qualified through an unconstitutional window. Time spent campaigning under a constitutionally defective framework cannot be recovered.

**Second**, Plaintiff's voter data purchases — made in reliance on the existing 8th District boundaries — are permanently rendered obsolete. These expenditures cannot be recouped.

**Third**, the *two years* of constituency relationships, voter outreach, and name recognition Plaintiff built within the existing 8th District geography cannot be transplanted into a redrawn district. Campaign relationship capital is non-fungible.

**Fourth** — and most distinctively — Kuhn's continued presence on Plaintiff's ballot is itself an ongoing, daily, irreparable harm. Every day Kuhn campaigns on a ballot she should not occupy is another day Plaintiff competes against an unconstitutionally manufactured opponent.

No damages remedy can restore the competitive equilibrium that would have existed absent the constitutional violations.

**Fifth**, as an Independent candidate without party financial support, the destruction of two years of campaign investment and infrastructure represents a uniquely catastrophic, unequal harm. An Independent candidate has no party to cover these losses, no staff to rapidly reconstitute a campaign in a redrawn district, and no donor base built on party loyalty. The harm to Plaintiff is categorically greater than any comparable harm to party-affiliated candidates.

## III.  THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFF.

The harm to Plaintiff from denial of relief — elimination of a lawfully certified candidacy, destruction of two years of campaign investment, and ongoing competition against an unconstitutionally created opponent — vastly outweighs any cognizable harm to Defendants from a TRO maintaining the status quo that existed before Defendants acted.

The State itself prohibited this action for fifty years. Tennessee Code Annotated § 2-16-102 barred mid-cycle redistricting since 1972. The existing district boundaries have been in place since 2022. The primary is August 6, 2026. Defendants face no cognizable hardship from being enjoined from enforcing legislation that their own predecessor statute prohibited and that they enacted for explicitly partisan purposes over the objection of every Democratic and independent voice in the legislature.

Defendants cannot claim hardship from being required to operate under the legal framework they themselves maintained for _**FIFTY YEARS**_. The equities do not merely tip in Plaintiff's favor — they weigh overwhelmingly in her favor.

## IV.  THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF.
The public interest is served by protecting the integrity of ongoing elections. It is not served by allowing a redistricting process — designed at _presidential_ direction, with partisan control of Congress as its stated purpose — to proceed unchecked. When the architects of redistricting announce on the legislative record that their goal is partisan entrenchment, no legitimate public interest is served by rushing that scheme to fruition.

9

Voters in the 8th Congressional District — particularly in the Shelby County & Madison County communities — have a profound public interest in elections conducted on fair, legally established terms. Allowing Kuhn to continue campaigning on a ballot she occupies only because of constitutional violations is not in the public interest. Allowing the entire 8th District electorate to cast primary votes under a map that may be declared unconstitutional is not in the public interest.

## V.  PURCELL DOES NOT BAR RELIEF — THIS COURT IS BEING ASKED TO RESTORE, NOT CHANGE, ELECTION RULES.

Defendants will inevitably invoke *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which counsels against court-ordered changes to election rules close to an election. *Purcell* is inapplicable here, and its logic actually supports Plaintiff's position.

"Purcell's concern is disruption caused by courts changing election rules close to election day." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020).  Here, Plaintiff does not ask this Court to change election rules. She asks this Court to **restore** the rules that existed for fifty years — rules that were in place when she qualified, when she purchased voter data, and when she began campaigning — and that Defendants unconstitutionally dismantled in the middle of an active election cycle.

The disruption *Purcell* guards against was caused by Defendants, not by Plaintiff.  It is the State's mid-election redistricting — enacted three months before the primary, after the qualifying deadline, and without any legitimate purpose other than partisan advantage — that created voter confusion and electoral chaos. Enjoining the unconstitutional change and restoring the pre-existing map does not create disruption; it resolves it.

## VI.  THIS MOTION IS DISTINGUISHABLE FROM THE TRO DENIAL IN HALE V. LEE.

This Court denied a TRO in the related Democratic candidates' case, *Hale v. Lee*. That denial was not a ruling on the merits of the constitutional challenges. The Court did not find those claims meritless — it found the movants had not demonstrated sufficient likelihood of success under the circumstances then before it.

Plaintiff Moses presents materially different facts that were not before the Court in *Hale*. The *Hale* plaintiffs were party-affiliated candidates and the Tennessee Democratic Party. Plaintiff Moses is an Independent candidate with no party infrastructure who has campaigned specifically within the existing 8th District for two years. The *Hale* plaintiffs did not present the Kuhn competitor injury — the documented, named opponent whose presence on Plaintiff's ballot is itself a constitutional violation. The *Hale* plaintiffs did not present Goins's coercive May 7 ultimatum letter as evidence of ongoing, active enforcement. These facts, unique to Plaintiff Moses, establish a stronger and independently cognizable basis for TRO relief.

Furthermore, this Court's published memorandum in *Hale v. Lee* stated that "potential voter confusion amid ongoing litigation this close to an election counsels strongly against the issuance of an injunction." Plaintiff respectfully submits that this reasoning does not reach the relief she seeks, for two independent reasons.

**First,** as to all special-window candidates: Plaintiff seeks restoration of the pre-existing 8th Congressional District map and removal of every candidate who failed to qualify by the deadline established under Tennessee Code Annotated § 2-5-101, as amended by 2024 Tenn. Acts ch. 822 — signed by Defendant Governor Lee and passed under the leadership of Defendant Speaker Sexton — which required all congressional candidates to qualify by the second Tuesday in March 2026. That deadline passed months before the May 7–15 special qualifying window opened. Every candidate who used that window failed to meet the deadline Defendants themselves enacted and signed into law eighteen months earlier. Removing them does not change a single district boundary, alter a single polling location, or confuse a single voter. It enforces Defendants' own prior statute.

**Second,** Defendant Heidi Kuhn bears an independent disqualification that requires specific attention. Kuhn — Shelby County Criminal Court Clerk, a sitting local elected official — ran in and lost the Shelby County Mayoral Democratic primary on May 5, 2026. She then filed a nominating petition for the 8th Congressional District through the special qualifying window on May 7–15 — a second race in the same 2026 election cycle.

During the 2026 regular session, which concluded on April 23, 2026 — just twelve days before the special session began — the Tennessee General Assembly considered and drafted HB 2080/SB 1968, which would have amended Tennessee Code Annotated § 2-5-101(f)(5) to explicitly prohibit a candidate from filing more than one qualifying petition for offices voted on by voters during a primary or general election. That bill was **not** passed. The Legislature recognized the problem — documented it in bill form — and then declined to close the door. Twelve days later, the special session created precisely the qualifying window that HB 2080 was designed to prevent. This is not legislative inaction. It is documented legislative awareness of an impermissible practice followed by a deliberate choice to leave the door open for that exact practice in the 2026 cycle.

That choice, combined with the deliberate January 1, 2027 effective date of HB 618/SB 624 — which grandfathered sitting dual officeholders from any restriction — constitutes an arbitrary, irrational, and invidious classification under the Equal Protection Clause. The Legislature recognized that sitting officeholders should not pivot from failed local races into congressional races, drafted a bill saying so, refused to pass it, and then created the mechanism that allowed exactly that to happen. Kuhn's presence on the CD-8 ballot is the direct and documented product of that constitutional manipulation.

### RELIEF REQUESTED

For all the foregoing reasons, Plaintiff **respectfully** requests that this Court issue a Temporary Restraining Order and, upon expedited briefing, a Preliminary Injunction:

1. ENJOINING Defendants Mark Goins and Linda Phillips, their officers, agents, servants, employees, and all persons acting in concert with them, from implementing, administering, certifying, or taking any action to give effect to any new congressional district map resulting from the May 2026 special legislative session for the 2026 election cycle;

2. RESTORING and MAINTAINING the pre-existing 8th Congressional District boundaries in effect for all purposes related to the 2026 election cycle, including candidate certification, voter registration, ballot preparation, and election administration;

3. DIRECTING Defendant Goins to remove from the CD-8 August 6, 2026 primary ballot any candidate who: (a) qualified through the unconstitutional special qualifying window created by 2026 Tenn. Pub. Ch. 2, 2d Extra. Sess., including specifically Heidi Kuhn; and/or (b) submitted a nominating petition for a different race in the 2026 election cycle prior to submitting a nominating petition for CD-8, in violation of Tennessee Code Annotated § 2-5-101; 2024 Tenn. Acts ch. 822

4. DECLARING that the mid-election redistricting of congressional districts after candidate filing deadlines have closed violates the First and Fourteenth Amendments to the United States Constitution and Tennessee Code Annotated § 2-16-102 as applied to the 2026 election cycle;

5. DECLARING that the special qualifying window created by 2026 Tenn. Pub. Ch. 2, 2d Extra. Sess. is unconstitutional as applied and that any candidacy arising from that window is legally void; and

6. Granting such other and further relief as this Court deems just and proper, including an expedited briefing schedule given the August 6, 2026 primary deadline.

**CONCLUSION**

This Court confirmed on June 4, 2026 that Plaintiff has independent litigation rights, independent briefing rights, and a case that retains its own identity within this consolidated litigation. That case now comes before the Court on its merits — not as an abstract challenge to legislative mapmaking, but as a concrete, documented, and legally precise demand for relief grounded in Defendants' own acts and omissions.

The constitutional violations here are layered and mutually reinforcing. At the broadest level, every candidate who entered the 8th Congressional District race through the May 2026 special qualifying window failed to comply with the qualifying deadline established by Tennessee Code Annotated § 2-5-101, as amended by 2024 Tenn. Acts ch. 822 — a law signed by Defendant Lee and advanced by Defendant Sexton eighteen months before the special session convened. The special window did not cure that failure.

It created it. These candidates did not miss a deadline. Defendants moved the deadline out from under them — and then opened a new door that their own prior statute had close

At the constitutional level, the special qualifying window is void in its entirety. It exists only as the product of the mid-election redistricting that is the subject of this litigation. A window built on an unconstitutional foundation cannot confer valid candidacies. Every name that entered the 8th District race through that window is on Plaintiff's ballot as a direct product of constitutional violations. No voter confusion is created by removing candidates who should never have appeared.

The confusion was created by Defendants. This Court restores order by undoing it. As to Heidi Kuhn specifically, the record is damning in three independent directions. First, she is a sitting Shelby County elected official who ran in and lost one race in the 2026 election cycle — the Shelby County Mayoral Democratic primary on May 5, 2026 — and then immediately pivoted into a congressional race through a window that would not exist but for unconstitutional state action. Second, the Tennessee Legislature, during the regular session that concluded just twelve days before the special session, considered and drafted HB 2080/SB 1968 — legislation that would have explicitly prohibited candidates from filing qualifying petitions for more than one office voted on during a primary or general election. The Legislature knew this was a problem. They wrote it down. They chose not to pass it. Twelve days later, the special session manufactured the precise mechanism HB 2080 was designed to prevent. Third, HB 618/SB 624 — which the Legislature did pass, restricting local elected officials from holding dual offices — was deliberately given an effective date of January 1, 2027, after the 2026 election cycle, immunizing Kuhn and candidates exactly like her from any restriction during the very cycle in which the special window was created. The Legislature recognized the problem, refused to close the statutory door, delayed the regulatory door, and then opened a constitutional trapdoor. That sequence is not a coincidence. It is documented, deliberate, and constitutionally indefensible.

Taken together, these five grounds — the March deadline violation, the unconstitutional qualifying window, the manufactured legislative gap, the documented legislative awareness of HB 2080, and the deliberate effective-date manipulation of HB 618 — establish with precision why every special-window candidate must be removed, why Kuhn must be removed on independent additional grounds, and why restoring the pre-existing 8th Congressional District map is not a disruption to the 2026 election but the only path to conducting one that is constitutionally legitimate.

The August 6 primary is 62 days away. The constitutional violations are ongoing. The evidence of deliberate manipulation is in the legislative record. Plaintiff respectfully urges this Court to act.

Respectfully submitted,

X _____

**Ms. Pamela Jeanine Moses**
Plaintiff, Pro Se
PO Box 80564
Memphis, Tennessee 38108
(901) 329-9992
mosesforcongress@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2026, a true and correct copy of the foregoing Renewed Motion for Temporary Restraining Order and Preliminary Injunction was filed with the Clerk of the United States District Court for the Middle District of Tennessee via the Court's pro se electronic filing portal, which will provide notice to all counsel of record.

**Office of the Governor Bill Lee**

**Tennessee State Capitol, 1st Floor**

**Nashville, Tennessee 37243**

**Linda Phillips, Shelby County Election Administrator**

**Shelby County Election Commission**

**157 Poplar Ave., Ste. 137**

**Memphis, Tennessee 38103**

**Speaker Cameron Sexton**

**Tennessee House of Representatives**

**301 6th Avenue North, Suite 600**

**Nashville, Tennessee 37243**

**Senate Majority Leader Jack Johnson**

**Tennessee State Senate**

**301 6th Avenue North**

**Nashville, Tennessee 37243**

**Mark Goins, Coordinator of Elections**

**Tennessee Division of Elections**

**312 Rosa L. Parks Avenue, Snodgrass Tower, 7th Floor**

**Nashville, Tennessee 37243**

X _____

**MS. PAMELA J. MOSES, Pro Se Plaintiff**

16