**RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 3:26-cv-00694

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| PAMELA JEANINE MOSES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER AND OPINION |
| v. | ) | |
| | ) | |
| GOVERNOR BILL LEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BEFORE: NALBANDIAN, Circuit Judge, CAMPBELL, Chief District Judge, and STIVERS, District Judge.**

**PER CURIAM.** Pamela Jeanine Moses is an independent candidate for Tennessee's Eighth Congressional District. After Tennessee redrew its congressional map during this 2026 election cycle and changed certain candidate-qualification rules, Moses sued *pro se*, challenging the new map and the rules implementing it. She seeks, among other things, restoration of the former map and removal of a newly qualified competitor from the ballot. Her Third Amended Complaint raises a laundry list of federal and state claims. *See* Third Am. Compl., R. 32, PID 41–46. We dismiss them all.[1]

## I. Facts

In May 2026, a week after the Supreme Court's landmark decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), Tennessee Governor Bill Lee convened a special session of the Tennessee

[1] Because Moses is proceeding *in forma pauperis*, we can dismiss the complaint at any time. *Bright v. Thompson*, 467 F. App'x. 462, 464 (6th Cir. 2012) (per curiam) (citing 28 U.S.C. § 1915(e)(2)).

General Assembly. R. 32, PID 36. State leaders understood *Callais* to have blessed partisan redistricting. *See, e.g.*, Speaker Cameron Sexton (@CSexton25), X (May 6, 2026), https://x.com/CSexton25/status/2052025699146310048; *see also Callais*, 146 S. Ct. at 1156. So, the session's goal was simple: "redraw districts to favor Republicans and keep Republicans in the U.S. House majority." *Sherman v. Hargett*, No. 3:26-cv-00616, slip op. at 2 (M.D. Tenn. July 23, 2026).

During that session, lawmakers passed a new congressional map, which split Shelby County (much of which previously formed one, overwhelmingly Democratic congressional district—the Ninth District) across three redrawn districts to dilute Democratic voting power. *Id*. The map also redrew the boundaries of the Eighth District, although the old and redrawn versions both contain (somewhat different) slices of eastern and central Shelby County. *See* Kayla Solomon, *Day 2 of Tennessee Special Session: Republican Congressional Map Revealed, Protestors Asked to Leave*, FOX13 Memphis (May 6, 2026), https://www.fox13memphis.com/news/day-2-of-tennessee-special-session-republican-congressional-map-revealed-protestors-asked-to-leave/article_4bb2c42d-4bd1-41fe-96f8-8d2749096abd.html. This newly enacted congressional map governs the 2026 primary and general elections. Kylie Walker, *Notice of Revised Congressional Districts and Special Qualifying Period*, Tenn. Sec'y of State (May 7, 2026), https://sos.tn.gov/newsroom/press-releases/notice-of-revised-congressional-districts-and-special-qualifying-period.

The State also reopened the candidate-qualification process. *Id*. Legislation accompanying the new map provided that candidates who had qualified under the old map could either remain candidates in the same-numbered redrawn district, switch to another district by filing a notarized statement, or withdraw by filing a notarized statement. Tenn. Code Ann. § 2-16-204(a). New

candidates could also enter the race during an eight-day special qualifying period ending on May 15, 2026 by submitting a nominating petition with 25 signatures. *Id*. § 2-16-204(b).

Pamela Jeanine Moses is an independent candidate for the United States House of Representatives who qualified to run in Tennessee's then-existing Eighth Congressional District before the State redrew the district. R. 32, PID 31–33. She appears to be running in the new Eighth District. *See id*. at PID 33. She sued Governor Bill Lee; Cameron Sexton, Speaker of the Tennessee House of Representatives; Jack Johnson, Majority Leader of the Tennessee Senate; the Tennessee General Assembly; Mark Goins, Tennessee's Coordinator of Elections; and Linda Phillips, the Shelby County Election Administrator. *Id*. at PID 31, 34. Moses seeks to invalidate and obtain various forms of relief against the new congressional map, the special post-redistricting qualifying window, and (in more cursory fashion) the delayed effective date of a state law banning dual officeholding, alleging that all these enactments have damaged her candidacy. *Id*. at PID 33, 38, 49–50.

## II. Standing

To demonstrate Article III standing at the pleading stage, Moses must plausibly allege an injury that's concrete and particularized, actual or imminent, fairly traceable to the challenged conduct, and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Charlton-Perkins v. U. of Cincinnati*, 35 F.4th 1053, 1059 (6th Cir. 2022). Standing also isn't one-and-done; it must exist for each claim, each form of relief, and each defendant. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

### A. The Redistricting Injury

Moses clears the standing hurdle for prospective relief against Goins and Phillips. She alleges that the new district boundaries extinguished the value of district-specific voter data and other campaign assets. R.32, PID 39–40. Those economic and operational harms are concrete and personal. *See Am. Assn. of Nurse Anesthesiology v. Kennedy,* 183 F.4th 427, 433 (6th Cir. 2026) ("[M]onetary harm . . . is a quintessential injury in fact that supports standing."). Goins and Phillips contributed to those harms and can alleviate them by restoring Moses's old district boundaries (or portions thereof).

Begin with Goins. According to the complaint, Goins, as coordinator of elections, generally supervises Tennessee elections and "is responsible for implementing" the new congressional map. R.32, PID 34, 37. Tennessee law confirms his supervisory role: "[t]he coordinator of elections is the chief administrative election officer of the state and shall obtain and maintain uniformity in the application, operation and interpretation of the election code." Tenn. Code Ann. § 2-11-201(b). So an order directed to Goins could affect the map, ballot, and qualification rules that he administers. The government doesn't appear to argue otherwise.

Moses has also adequately alleged standing against Phillips to the extent her claims challenge the new congressional map in Shelby County. Phillips, as the Shelby County Election Administrator, helps implement apportionment plans and administers congressional elections in Shelby County. R. 32, PID 34; Tenn. Code Ann. § 2-12-201(13). And because the redistricting changed which Shelby County voters fall in the Eighth District, Phillips's implementation of the new map affects the electorate Moses says she had spent time and resources cultivating. So her alleged injury is fairly traceable, at least in part, to Phillips's implementation, and an injunction against Phillips could plausibly redress that portion of the injury. That's enough for standing. *See*

*Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("True, a single dollar often cannot provide full redress, but the ability to effectuate a partial remedy satisfies the redressability requirement.") (citation modified).[2]

**B. The Qualifying-Window Injury**

Moses also has standing to challenge the special qualifying window. She alleges that Tennessee unlawfully adopted a special post-redistricting qualifying period for new candidates, opening the race to candidates who otherwise couldn't have entered—including Heidi Kuhn, who now competes with Moses for the same congressional seat. R. 32, PID 37–39. That's a concrete and particularized injury.

*Bost v. Illinois State Board of Elections* reinforces that conclusion: candidates have a personal stake in the rules governing their elections, and a mid-race rule change can injure them whether or not it ultimately diminishes their electoral chances. 607 U.S. 71, 77–79 (2026). True, *Bost* expressly limited its holding to vote-counting rules. *Id.* at 82 n.7. But the reasoning it used to get there was broader: "Win or lose, candidates suffer when the process departs from the law." *Id.* at 77; *see also* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989) ("Let us not quibble about the theoretical scope of a 'holding'; the modern reality, at least, is that when the Supreme Court . . . decides a case, not merely the *outcome* of that decision, but the mode of analysis that it applies will thereafter be followed by the lower courts within that system."). A midstream departure from the laws governing her race is what Moses alleges here. And because Goins supervises Tennessee's election machinery and has statutory responsibility over candidate qualification and ballot eligibility, Tenn. Code Ann. §§ 2-11-201(b), -202(a)(12),

[2] Phillips responds that she didn't draw or enact the new map. True enough. But that doesn't defeat traceability: Moses challenges the map's ongoing implementation, and Phillips is one of the officials charged with implementing apportionment plans in Shelby County.

her injuries are fairly traceable to him and likely to be redressed by the prospective relief she seeks against him—restoration of the old map and removal from the ballot of candidates who qualified through the special window, R. 32, PID 49–50.[3]

The government says that *Wittman v. Personhuballah*, 578 U.S. 539 (2016) cuts against standing here. In the state's view, *Wittman* stands for the proposition that merely pointing to changed district lines or a changed candidate slate doesn't give candidates standing. State Defs.' Mot. to Dismiss, R. 55, PID 343. But *Wittman* is distinguishable in at least two respects. First, the candidates there based standing on a different theory of injury: that a redrawn map would replace favorable voters with unfavorable ones and thereby diminish their reelection prospects. *Id.* at 545. The Court found no evidence of *that* asserted harm. *Id.* That says nothing about whether a candidate asserting different injuries (as here) could have standing to challenge redistricting. *See Roberts v. Progressive Preferred Ins. Co.*, 167 F.4th 955, 964 (6th Cir. 2026) (a plaintiff's "own legal theory" is "the theory by which we must evaluate his standing").

Second, *Wittman* involved a court-approved remedial map. 578 U.S. at 542–43. The candidates didn't claim that the remedial map itself was an unlawful election rule under which officials would conduct their elections. *Bost*, by contrast, recognizes a distinct process injury from being

[3] Moses has standing to pursue her election-related claims, with one exception: she lacks standing to challenge the delayed effective date of Tennessee's dual-officeholding ban. *See* R. 32, PID 32, 38–39. She claims the delayed effective date injured her by incentivizing sitting officeholders like Kuhn to enter the race through the special qualifying window. *Id*. But even if the ban had taken effect immediately (as Moses would've liked), it wouldn't have barred Kuhn from using the special qualifying window and running for Congress. That's because the provision regulates dual *office-holding*, not *running* for office. 2026 Tenn. Pub. Acts ch. 596, § 1. So, because whether an earlier effective date would've kept Kuhn out of the race requires us to speculate about her choices as an independent third party, *see California v. Texas*, 593 U.S. 659, 675 (2021), Moses can't plausibly establish traceability or redressability.

forced to compete under an allegedly unlawful election rule. 607 U.S. at 77. So *Wittman* neither considered nor rejected that theory.

### C. Moses Lacks Standing to Sue Other Defendants

Governor Lee, Speaker Sexton, Senator Johnson, and the General Assembly are a different story. The acts Moses attributes to them—calling the session, sponsoring legislation, and enacting the challenged statutes—are complete. The complaint doesn't allege that any of those defendants prepares ballots, certifies candidates, or otherwise implements the map. And Moses "cite[s] nothing in Tennessee law that gives the governor any enforcement authority to carry out elections under the maps that [she] challenge[s]." *Tennessee State Conf. of NAACP v. Lee*, 746 F. Supp. 3d 473, 509 (M.D. Tenn. 2024) (citation modified); *see also Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024) ("[Plaintiffs] lack standing to challenge a law in the abstract. Plaintiffs instead must sue the particular defendant with the power to *enforce* the challenged law against them.") (citation modified). So neither an injunction nor a declaration against these defendants would redress Moses's ongoing injuries.

Finally, we note that Moses has since withdrawn her request for compensatory damages against the state defendants. Pl.'s Resp. to State Defs.' Mots. to Dismiss, R. 40, PID 157. That means only her requests for prospective relief remain against those defendants. And as we already explained, prospective relief against Lee, Sexton, Johnson, and the General Assembly won't redress her injury. So we dismiss Moses's claims against them for lack of standing. We consider the merits only as to Goins and, to the extent Moses challenges implementation of the congressional map in Shelby County, Phillips.[4]

[4] We also note that *Gill v. Whitford*, 585 U.S. 48 (2018) doesn't deprive Moses of standing simply because she seeks statewide relief (i.e., a return to the old map). *Gill* held that a plaintiff with a district-specific injury (there, vote dilution; here, damage to a candidacy) can get only the relief

## III. Plaintiff's Claims Are Nonjusticiable or Lack Merit

To survive dismissal, Moses must plead enough facts to make each claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We take well-pleaded facts as true, but not legal conclusions dressed up as facts. *Id*. Because Moses is *pro se*, we construe her complaint liberally. *Johnson v. E. Tawas Hous. Comm'n*, 2021 WL 7709965, at *1 (6th Cir. Nov. 9, 2021). At the same time, we're not permitted to overlook ordinary pleading rules, speculate about what her theory might be, or otherwise invent allegations and legal theories for her. *Id.* Judged by that framework, Moses hasn't plausibly alleged any violation of her rights.

### A. Due Process

Although Moses often doesn't "specify whether [she] brings a procedural or substantive due process challenge, under either formulation, [she] must show a deprivation of a property or liberty interest by government action." *Fouts v. Warren City Council*, 97 F.4th 459, 469 (6th Cir. 2024). Her allegations in Count I don't get her over the hump.

First, Moses asserts a "liberty or property interest" in her candidacy in the former Eighth District. R. 32, PID 41. But "Supreme Court precedent suggests that a right to candidacy is not a cognizable liberty interest protected by procedural due process." *Brandenburg v. Mich. Bd. of State Canvassers*, 2022 WL 2526947, at *3 (W.D. Mich. July 7, 2022) (citing *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("[A]n unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause.")). Moses herself "cites no authority for the proposition that [she] has a liberty interest in running for . . . public

---

necessary to remedy that injury, not wholesale relief based on a generalized objection to a statewide map. *Id*. at 66–68. That may limit the *geographic scope of relief* Moses can obtain here, but it doesn't eliminate her standing to challenge the map to the extent it injures her own candidacy. *See Sherman v. Hargett*, No. 3:26-cv-00616, slip op. at 3 n.1 (M.D. Tenn. July 23, 2026).

office." *Fouts*, 97 F.4th at 469. And if candidacy itself isn't a protected liberty or property interest, neither is candidacy within a particular set of district lines (nor are any of the other entitlements of candidacy to which she lays claim, *see* R. 32, PID 41–42). *Cf. Kowall v. Benson*, 18 F.4th 542, 548 (6th Cir. 2021) ("And any right to appear on the particular platforms afforded only to candidates is null—again, because would-be candidates, like the legislators here, have no fundamental right to run for office.").

Next, Moses claims that the redistricting deprived her of a property interest in the voter data and campaign materials she purchased. R. 32, PID 41. But the State didn't seize, destroy, or deny Moses access to those materials; redistricting merely reduced their usefulness. And due process doesn't protect against the "indirect adverse effects of governmental action." *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980). In other words, there's been no "deprivation" in the constitutionally relevant sense.

Moses also says Tennessee violated due process by "retroactively" changing the rules after she'd qualified and relied on the old map. R. 32, PID 41–42. But without a deprivation of a protected liberty or property interest—which, as we've explained, she hasn't shown—even retroactive legislation doesn't violate due process. *Fouts*, 97 F.4th at 468–69. And a law isn't retroactive just because it "upsets expectations based in prior law." *Id.* at 468 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)).

The same goes for any procedural due-process claim that Moses makes: her failure to demonstrate an underlying protected interest or deprivation dooms it as well. *Id*. at 469; *see also Sickles v. Campbell County*, 501 F.3d 726, 733 (6th Cir. 2007).

So we dismiss Count I for failure to state a claim.

## B. Equal Protection

Moses's various equal-protection challenges in Count II also fail. First, Moses's allegation that the redistricting plan violates the Equal Protection Clause by "cementing one political party's dominance" and shutting out "independent and opposition candidates," R. 32, PID 43, presents a nonjusticiable political question. In *Rucho v. Common Cause*, the Supreme Court rejected a nearly identical equal-protection challenge to partisan gerrymandering, reasoning that courts lack judicially manageable standards for defining what's politically "fair" and how much of a departure from that amorphous standard of "fairness" is "too much." 588 U.S. 684, 707–08 (2019).

Moses's equal-protection challenges to other aspects of Tennessee's election machinery don't get off the ground either. To plead an equal-protection claim, a plaintiff must show that the government subjected people "who are in all relevant respects alike" to differential treatment. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). But the challenged rules didn't treat Moses differently from similarly situated candidates. Moses insists that, after the new map came out, she only had eight days "to scramble and re-qualify" while new candidates faced "no comparable burden." Pl.'s Resp. to Defs.' Mots. to Dismiss, R. 57, PID 384. That's wrong; she didn't need a new petition and remained qualified in the same-numbered district. Tenn. Code Ann. § 2-16-204(a)(1), (a)(2)(A). So she hasn't plausibly alleged unequal treatment.

Last and least, Moses asserts that Tennessee's "partisan" and "not . . . race-based" cracking of Shelby County diluted minority voting power and thereby violated equal protection. R. 32, PID 43. To the extent she's putting forward a disparate-impact theory, that theory has been foreclosed for half a century. *See Washington v. Davis*, 426 U.S. 229, 242 (1976). To the extent she's disclaiming a race-based theory altogether and alleging that redistricting violated equal protection because it was impermissibly partisan, *Rucho* forecloses that line of argument.

We dismiss Count II for lack of justiciability and failure to state a claim.[5]

### C. First Amendment

Count III alleges that the redistricting and special qualifying window burden Moses's First Amendment rights. R. 32, PID 44. Not so. Moses is still just as free to speak, campaign, associate with voters, and use her campaign materials. What changed is her electorate and the number of competitors she faces, but the First Amendment doesn't guarantee her the voters or competitors of her choosing. *See Zielasko v. State of Ohio*, 873 F.2d 957, 961 (6th Cir. 1989).

So, at most, the challenged laws alter the electoral value of her First Amendment activities, not her freedom to engage in them. And in *Rucho,* the Supreme Court's answer to voters' and parties' claimed First Amendment harms from mid-cycle redistricting—including impaired fund-raising, mobilization, and political organization—was similar: "To begin, there are no restrictions on speech, association, or any other First Amendment activities in the districting plans at issue. The plaintiffs are free to engage in those activities no matter what the effect of a plan may be on their district." 588 U.S. at 713–14.

Moses protests that the changed rules burden her "First Amendment right to run for office," R. 32, PID 44, but that still doesn't get her any traction. Our circuit distinguishes political speech, which is constitutionally protected, from "the mere fact of candidacy," which isn't. *Murphy v. Cockrell*, 505 F.3d 446, 451 (6th Cir. 2007).

Finally, Moses urges us to apply the so-called *Anderson-Burdick* balancing test to her claims. Pl.'s Resp. to Defs.' Mots. to Dismiss*,* R. 57, PID 387; *see also Daunt v. Benson*, 999 F.3d

---

[5] To the extent Moses ever alleged that independent candidates like her were subject to unequal treatment, she appears to have waived that argument. *See* Pl.'s Resp. to Defs.' Mots. To Dismiss*,* R. 57, PID 384 (clarifying that Moses does not seek to "compare [herself] to party-affiliated candidates generally," but rather "to the specific class of newly admitted candidates who benefitted from" the special qualifying window).

299, 323 (6th Cir. 2021) (Readler, J., concurring) ("*Anderson-Burdick's* hallmark is standardless standards."). We decline to do that. *Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023) supplies the right framework. We apply strict scrutiny to restrictions on "pure speech." *Id.* at 592. We apply the *Anderson-Burdick* balancing test to "ballot-access claims, political-party associational claims, and voting-rights claims." *Id.* at 590. And we apply the "relatively lenient" *O'Brien* test to laws restricting expressive conduct with only an incidental effect on speech. *Id.* at 592–93. None of those fit here: the challenged laws don't target Moses's speech or association; they don't burden her vote, her right to associate with a political party, or her own access to the ballot; and they don't regulate any expressive conduct of hers. And to the extent Moses's claim reduces to a burden on her candidacy itself, rational-basis review applies. *Kowall*, 18 F.4th at 547–49. The challenged rules sail through under that standard.

So we dismiss Count III for failure to state a claim.

### D. Article I, §§ 2 and 4

Count IV alleges that Tennessee violated Article I, §§ 2 and 4 of the Constitution by using the new map to "predetermine the outcome of a federal election" in favor of Republicans. R. 32, PID 45. That's a claim of unconstitutional political advantage. But *Rucho* holds that "neither § 2 nor § 4 of Article I provides a judicially enforceable limit on the political considerations that the States and Congress may take into account when districting." 588 U.S. at 717 (citation modified). Further, Moses's assertion that the new election rules unconstitutionally deprive voters of a "meaningful popular election[]," R. 32, PID 45, "seems like an objection more properly grounded in the Guarantee Clause of Article IV, § 4, which guarantees to every State in the Union a Republican Form of Government" but doesn't "provide the basis for a justiciable claim," 588 U.S. at 717–18 (citation modified).

And to the extent Moses separately challenges the special qualifying window, that procedural ballot-access rule falls within the state legislature's broad authority to regulate the "Manner" of congressional elections under the Elections Clause. U.S. Const. art. I, § 4, cl. 1. The window reopened qualification to new candidates generally after the districts changed. So unlike the measure in *Cook v. Gralike*, 531 U.S. 510 (2001)—which violated the Elections Clause by putting derogatory information on the ballot next to the names of certain candidates based on their views, *id*. at 524—Tennessee's window doesn't distinguish among (much less disparage) candidates based on party, viewpoint, incumbency, or some other candidate characteristic. *See Tenn. Sec'y of State, Secretary of State's Office Announces Candidate Qualifying Deadline for Congressional Districts Drawing Near* (May 14, 2026), https://sos.tn.gov/newsroom/press-releases/secretary-of-states-office-announces-candidate-qualifying-deadline-for. So the measure doesn't implicate the relevant constitutional evil: functionally imposing an additional qualification for office by excluding candidates or "publicly disadvantag[ing] certain political viewpoints on the face of the ballot." *Sharma v. Hirsch*, 121 F.4th 1033, 1040 (4th Cir. 2024) (Wilkinson, J.). At the end of the day, "the proper venue for debates over discretionary state election policies remains with Congress, more so than with the federal courts." *Id*. at 1039.[6]

For those reasons, we dismiss Count IV for lack of justiciability and failure to state a claim.

[6] Notably, Moses cites no authority for her claim that, once candidates have qualified or an election cycle has begun, the legislature loses its Elections Clause authority to make or alter rules for that election. *See* Pl.'s Resp. to Defs.' Mots. To Dismiss, R. 57, PID 388. We decline to write this atextual temporal limitation into the Elections Clause.

**E. The Voting Rights Act**

Let's move ahead to Count VI (for jurisdictional reasons that'll become clear, we'll deal with Count V last). Here, Moses alleges that the new map violates § 2 of the Voting Rights Act by cracking minority voters in Shelby County across multiple districts. R. 32, PID 46.

For present purposes, we'll assume that § 2 creates a private cause of action and that candidates like Moses can bring one. That said, both propositions have generated a fair amount of doubt. On the first, the Eighth Circuit recently concluded that the longstanding assumption that § 2 is privately enforceable "rests on flimsy footing." *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204, 1217–18 (8th Cir. 2023). And the Fifth Circuit has noted that our own precedent simply announced a private right of action "without any analysis." *Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023) (citing *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999)).

On the second, the Act authorizes suit by an "aggrieved person," 52 U.S.C. § 10302(a), and some courts have read that term to only cover people "whose [own] voting rights have been denied or impaired"—not candidates complaining that an allegedly unlawful voting practice cost them votes they hoped to receive. *Roberts v. Wamser*, 883 F.2d 617, 621, 624 (8th Cir. 1989); *see also McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 845 (N.D. Ohio 1998). Because Moses asserts only injuries to her *candidacy* from the challenged map and not any impairment of her own vote on account of race, she falls into the latter bucket.

But we don't need to resolve either issue today because Moses's allegation of a "result-based" § 2 violation—minority cracking "rooted in partisan manipulation," R. 32, PID 46—runs headfirst into Supreme Court precedent. *Louisiana v. Callais* and its predecessors have required § 2 plaintiffs to "disentangle race from the State's race-neutral considerations, including

politics”—that is, to rule out nonracial explanations for a redrawn map. 146 S. Ct. at 1157. Moses does the opposite: she affirmatively alleges that partisan manipulation drove the cracking. That defeats her § 2 claim, so we dismiss it.

### F. State-Law Claims

Count V asserts violations of Tennessee law. Having dismissed all claims over which we have original jurisdiction, we decline to exercise supplemental jurisdiction over Count V. 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the foregoing reasons, we **GRANT** Defendants’ motions to dismiss. We therefore **DISMISS** the following claims **WITHOUT PREJUDICE**:

1. all claims against Lee, Sexton, Johnson, and the General Assembly;
2. all claims against Phillips **except** to the extent they challenge her implementation of the congressional map in Shelby County;
3. Moses’s challenge to the delayed effective date of Tennessee’s dual-officeholding prohibition;
4. the partisan-gerrymandering theories in Count II;
5. the partisan-gerrymandering and Guarantee Clause theories in Count IV; and
6. Count V.

We **DISMISS** the following claims **WITH PREJUDICE**, to the extent they are asserted against Goins or against Phillips within the scope of her local implementation authority:

1. Count I;
2. the remaining equal-protection theories in Count II;
3. Count III;

4. the Elections Clause challenge to the special qualifying window in Count IV; and
5. Count VI.

Plaintiff's emergency motion for a temporary restraining order and preliminary injunction, as well as any other outstanding emergency motions, are **DENIED AS MOOT**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

IT IS SO ORDERED.